**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| QUINTUS CORPORATION, *et al.*,, | ) Case No. 01-00501 through |
| | ) Case No. 01-00503 (MFW) |
| Debtors, | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| QUINTUS CORPORATION, | ) |
| MUSTANG.COM, INC., and ACUITY | ) |
| CORPORATION, | ) |
| | ) |
| Plaintiffs, | ) Adv. No. 04-53074 (MFW) |
| | ) |
| v. | ) |
| | ) |
| AVAYA, INC., | ) Re: Docket Nos. 120, 121, 148, 149 |
| | ) |
| Defendant. | ) |
| | ) |

**NOTICE OF APPEAL**

Defendant Avaya, Inc. appeals under 28 U.S.C. §158(a) or (b) from the Order and

Judgment of Hon. Mary F. Walrath, United States Bankruptcy Judge, granting in part the

Motions for Partial Summary Judgment and for Sanctions, filed by the Chapter 11 Trustee on

Plaintiffs' behalf, and awarding damages in the amount of $1,888,410.52, entered in this

adversary proceeding on the 27th day of October, 2006 (D.I. 121) and the Order and Amended

Judgment of Hon. Mary F. Walrath, overruling the objections of Avaya, Inc. to the request for an

amended judgment filed by the Chapter 11 Trustee on Plaintiffs' behalf, and awarding damages

in the amount of $1,535,979.57, entered in this adversary proceeding on the 9th day of June 2008

(D.I. 148, 149.)

The names of all parties to the order appealed from and the names, addresses, and

telephone numbers of their respective attorneys are as follows:

Kimberly E.C. Lawson (No. 3966)
Reed Smith LLP
1201 Market Street; Ste. 1500
Wilmington, DE 19801
(302) 778-7500

*Attorneys for Kurt F. Gwynne,*
*Chapter 11 Trustee*

Jeffrey S. Goddess (No. 630)
Rosenthal, Monhait & Goddess P.A.
909 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
(302) 656-4433

James D. Arden
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

*Attorneys for Defendant Avaya, Inc.*

Dated: June 19, 2008

Respectfully submitted,

By: */s/ Jeffrey S. Goddess*
Jeffrey S. Goddess (No. 630)
Rosenthal, Monhait & Goddess, PA
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19806
(302) 656-4433

- and -

James D. Arden
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

*Attorneys for Defendant Avaya, Inc.*

2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

## APPEAL TRANSMITTAL SHEET

Case Number: _____  ○ BK   ○ AP

   If AP, related BK Case Number: _____

Title of Order Appealed:

_____
        Docket Number: _____     Date Entered: _____

Item Transmitted:   ○ Notice of Appeal         ○ Motion for Leave to Appeal
                  ○ Amended Notice of Appeal   ○ Cross Appeal
             Docket Number: _____    Date Filed: _____

\*Appellant/Cross Appellant:        \*Appellee/Cross Appellee
_____   _____
Counsel for Appellant:          Counsel for Appellee:

_____   _____
_____   _____
_____   _____
_____   _____
_____   _____

*If additional room is needed, please attach a separate sheet.*

Filing Fee paid?   ○ Yes   ○ No

IFP Motion Filed by Appellant?   ○ Yes   ○ No

Have Additional Appeals to the Same Order been Filed? ○ Yes   ○ No
   If so, has District Court assigned a Civil Action Number?   ○ Yes ○ No   Civil Action # _____

Additional Notes:

_____

_____     By: _____
Date                             Deputy Clerk

_____
                                  FOR USE BY U.S. BANKRUPTCY COURT
Bankruptcy Court Appeal (BAP) Number: _____
7/6/06

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| QUINTUS CORPORATION, et al., | ) | Case No. 01-00501 through |
| | ) | Case No. 01-00503(MFW) |
| Debtors. | ) | |
| _____ | ) | Jointly Administered |
| | ) | |
| QUINTUS CORPORATION, | ) | |
| MUSTANG.COM, INC., and | ) | |
| ACUITY CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 04-53074 |
| | ) | |
| AVAYA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER**

**AND NOW**, this **27th** day of **OCTOBER, 2006,** upon consideration of the cross motions for summary judgment filed by the parties, and for the reasons set forth in the accompanying Opinion, it is hereby

**ORDERED** that the motion of the Defendants is **GRANTED IN PART;** and it is further

**ORDERED** that Count II of the Plaintiffs' complaint is **DISMISSED;** and it is further

**ORDERED** that the motion of the Plaintiffs is **GRANTED IN PART;** and it is further

**ORDERED** that judgment is entered in favor of the Plaintiffs against the Defendant in the amount of $1,888,410.52.


BY THE COURT:


Mary F. Walrath
United States Bankruptcy Judge


cc:  Kimberly E.C. Lawson, Esquire [1]

---

[1]  Counsel shall serve a copy of this Order and the accompanying Opinion on all interested parties and file a Certificate of Service with the Court.

SERVICE LIST

Kimberly E.C. Lawson, Esquire
John G. Harris, Esquire
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Counsel for the Chapter 11 Trustee

Jeffrey Goddess, Esquire
Rosenthal, Monhait & Goddess, P.A.
919 N. Market Street, Suite 1401
Wilmington, DE 19801
Counsel for Avaya, Inc.

James D. Arden, Esquire   Esquire
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
Counsel for Avaya, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| QUINTUS CORPORATION, et al., | ) Case No. 01-00501 through |
| | ) Case No. 01-00503(MFW) |
| Debtors. | ) |
| _____ | ) Jointly Administered |
| | ) |
| QUINTUS CORPORATION, | ) |
| MUSTANG.COM, INC., and | ) |
| ACUITY CORPORATION, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adversary No. 04-53074 |
| | ) |
| AVAYA, INC., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**OPINION**[1]

Before the Court are cross motions for summary judgment in
the above adversary proceeding filed by the chapter 11 Trustee of
the Debtors' estate and by Avaya, Inc., the purchaser of
substantially all the assets of the Debtors.  The Trustee has
also filed a Motion for Sanctions seeking judgment in his favor
as a result of Avaya's destruction of books and records essential
to the Trustee's case.  For the reasons set forth below, the
Court will grant, in part, both motions of the Trustee and will
grant, in part, Avaya's motion for partial summary judgment.

---

[1] This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

I.  <u>BACKGROUND</u>

On February 22, 2001, Quintus Corporation ("Quintus") and its subsidiaries (collectively the "Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code.  On that same day, the Debtors executed an Asset Purchase Agreement ("APA") with Avaya, Inc. ("Avaya") for the sale of substantially all the Debtors' assets.  In exchange for the Debtors' assets, Avaya agreed to assume certain of the Debtors' liabilities not to exceed $30 million and to pay $30 million in cash at closing.  On April 6, 2001, the Court entered an Order authorizing the sale of the Debtors' assets free and clear of all claims and interests pursuant to the terms of the APA.  The sale closed on April 11, 2001 (the "Closing Date").

Subsequently, on January 30, 2002, Kurt F. Gwynne (the "Trustee") was appointed as the chapter 11 trustee in the jointly administered cases.  On March 18, 2004, the Trustee filed an adversary complaint against Avaya asserting breach of contract and unjust enrichment for failure to pay certain liabilities assumed under the APA.  Avaya filed an answer and affirmative defenses on April 19, 2004.  After discovery, both parties moved for summary judgment.

2

Avaya seeks dismissal of the adversary complaint.[2]  The
Trustee seeks an order finding that Avaya materially breached the
APA and awarding damages accordingly.  The Trustee seeks that
relief based on the evidence garnered in discovery and on the
fact that Avaya has failed to produce relevant documents
essential to the Trustee's case which were in Avaya's sole
control and which Avaya was obligated to maintain pursuant to the
APA.

The motions have been fully briefed and are ripe for
decision.

## II.  JURISDICTION

The Court has jurisdiction over this adversary proceeding
pursuant to 28 U.S.C. §§ 1334(b) & 157(b)(2)(A), (E), (N) & (O).

## III. DISCUSSION

### A.    Standard for Summary Judgment

Summary judgment is appropriate where "there is no genuine
issue as to any material fact and . . . the moving party is
entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  "In deciding a motion for summary judgment, the judge's

---

[2]  Avaya previously filed a motion to dismiss one count of
the complaint.  The Court deferred ruling on that motion pending
the completion of discovery.  Because Avaya's motion for summary
judgment raises the same issue, this decision moots the dismissal
motion.

function is . . . to determine if there is a genuine issue for trial." Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once the moving party establishes the absence of a genuine issue of material fact, however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e).[3] See also Fireman's Ins. Co. of Newark, N.J. v.

---

3 To rebut a moving party's record, Rule 56(e) requires:

(e) . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

<u>DuFresne</u>, 676 F.2d 965, 969 (3d Cir. 1982); <u>Olympic Junior, Inc.</u>
<u>v. David Crystal, Inc.</u>, 463 F.2d 1141, 1146 (3d Cir. 1972).

In determining whether a factual dispute warranting trial
exists, the court must view the record evidence and the summary
judgment submissions in the light most favorable to the non-
movant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49
(1986).  Issues of material fact are those "that might affect the
outcome of the suit under governing law."  <u>Id.</u> at 248.  An issue
is genuine when it is "triable," that is, when reasonable minds
could differ on the result.  <u>Matsushita</u>, 475 U.S. at 587.

In this case, the parties have supported their cross motions
for summary judgment with references to depositions and documents
garnered through discovery, as well as sworn affidavits.  Though
at first blush there appears to be a dispute of fact (whether
Avaya paid all assumed liabilities), in reality there is not.
The identity of the liabilities actually paid by Avaya is not
disputed; the Trustee has obtained copies of all the checks
issued by Avaya.  The crucial issue in dispute is one of contract
interpretation: which liabilities did Avaya assume?

1.    <u>Summary Judgment in Breach of Contract Suit</u>

Summary judgment is proper where contract language is
unambiguous and favors the interpretation advanced by the movant.
<u>Newport Assocs. Dev. Co. v. Travelers Indemnity Co. of Ill.</u>, 162
F.3d 789, 791 (3d Cir. 1998); <u>Tamarind Resorts Assocs. v. Gov't</u>

of the Virgin Islands, 138 F.2d 107, 111 (3d Cir. 1998).

"Contract language is not ambiguous simply because the parties

disagree on its meaning." E.I. Dupont de Nemours & Co. v.

Allstate Ins. Co., 693 A.2d 1059, 1061 (Del. 1997). See also

Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93

(3d Cir. 2001). "Rather, a contract is ambiguous only when the

provisions in controversy are reasonably or fairly susceptible of

different interpretations." Rhone-Poulenc Basic Chems. Co. v.

Am. Motorists, Inc., 616 A.2d 1192, 1196 (Del. 1992).

Under Delaware law, the starting point for any contractual

interpretation is the plain language of the parties' agreement.[4]

Citadel Holding Corp. v. Roven, 603 A.2d 818, 822 (Del. 1992).

"If a writing is plain and clear on its face . . . the writing

itself is the sole source for gaining an understanding of

intent." City Investing Co. Liquidating Trust v. Cont'l Cas.

Co., 624 A.2d 1191, 1198 (Del. 1993); Klair v. Reese, 531 A.2d

219, 223 (Del. 1987).

Where the meaning and application of the terms of the

contract are uncertain, the trial court may consider testimony

pertaining to antecedent agreements, communications and other

factors which bear upon the proper interpretation of the

---

[4] Pursuant to section 10.06, the APA is governed by
Delaware law. (Appendix to Opening Brief of Defendant Avaya,
Inc., in Support of its Motion for Partial Summary Judgment at A
50 (hereinafter referred to as "Appendix").)

contract.  <u>Klair</u>, 531 A.2d at 223.  <u>See also</u> <u>James River-</u>
<u>Pennington, Inc. v. CRSS Capital, Inc.</u>, No. 13870, 1995 WL
106554, at *5 (Del. Ch. 1995) (concluding that where contract is
ambiguous, the court is permitted to consider objective,
extrinsic evidence of the intent of the parties in drafting the
operative language).

     2.   <u>Sanction for Failure to Produce Documents</u>

    The Trustee also seeks summary judgment as a sanction for
Avaya's failure to produce documents in discovery.  Specifically,
the Trustee argues that Avaya failed to produce the Debtors'
general ledger, sub-ledgers, and vendor files from which the
Trustee could establish what remains unpaid of the liabilities
Avaya assumed.  The Trustee argues that Avaya had a contractual
obligation under section 5.05(a) of the APA to maintain those
records for seven years after the Closing Date, yet destroyed
them within months of Closing.  (Appendix at A 36.)  The Trustee
contends that the destroyed documents are highly relevant to this
litigation because they go to the heart of the dispute: what
liabilities were assumed and what assumed liabilities remain
unpaid.  The Trustee asserts that he is highly prejudiced by the
destruction of the documents, to the extent that the Court does
not agree that he is otherwise entitled to summary judgment on
the legal bases asserted in his motion for partial summary
judgment.  <u>See, e.g.</u>, <u>Shamis v. Ambassador Factors Corp.</u>, 34 F.

7

Supp. 2d 879, 889 (S.D.N.Y. 1999) (stating that in determining the prejudice suffered as a result of destruction of documents, the court should "examine the materiality and value of the suppressed evidence upon the ability of [the movant] to fully and fairly prepare for trial."). As a result, the Trustee argues that he is entitled to sanctions, including the entry of judgment in his favor on the complaint. See, e.g., Shepherd v. Am. Broad. Cos., 62 F.3d 1469, 1479 (D.C. Cir. 1995) (concluding that judgment is appropriate sanction where destruction of documents deprives adversary of critical evidence).

Avaya responds that there is no evidence that it intentionally destroyed these documents to suppress the truth. The destruction occurred in 2001 or 2002, long before the Trustee commenced this adversary proceeding (and before the Trustee was even appointed). Therefore, Avaya asserts that the Court cannot find that the destruction of documents was done in anticipation of litigation - a necessary element to sanction a party for document destruction. See, e.g., Shamis, 34 F. Supp. 2d at 888-89 ("A condition precedent to the imposition of sanctions is whether [the party charged with destruction] knew or should have known that the destroyed evidence was relevant to pending, imminent or reasonably foreseeable litigation."). Further, Avaya argues that it substantially fulfilled its obligation to retain the records, because it gave copies to the Debtors' financial

adviser. Finally, it asserts that the Trustee is not prejudiced by the document destruction because all the documents relevant to the issue before the Court have been produced, namely the Final Schedule, which Avaya asserts is the definitive list of all liabilities which it assumed.

To sanction a party who has destroyed evidence, the court must consider: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) what degree of sanction is necessary to avoid substantial unfairness to the opposing party and to deter such conduct by others in the future. <u>Schmid v. Milwaukee Elec. Tool Corp.</u>, 13 F.3d 76, 79 (3d Cir. 1994).

The Court finds that in this case, contrary to Avaya's assertion, the destruction of documents was not unintentional; rather Avaya deliberately deleted the Debtors' electronic records in order to give itself more computer space.[5]  The records were

---

[5]  Avaya's assertion that it gave hard copies of the documents to the Debtors' financial adviser is not supported by the record.  Although the Debtors' former CFO, Mark Thompson, testified that he boxed his records and left them behind for the Debtors' advisers, there is no evidence that those records were all the Debtors' financial records.  (Opening Brief in Support of Chapter 11 Trustee's Motion for Sanctions for Spoliation of Evidence, Exhibit D.)  Another former employee of the Debtors and Avaya, Rosie Nguyen, testified that she sent the Debtors' financial records to Avaya's archives.  (<u>Id.</u>, Exhibit A.) Further, the Debtors' financial advisers testified that the records they received were extremely limited.  (Reply Brief in Support of Chapter 11 Trustee's Motion for Sanctions for Spoliation of Evidence, Exhibits G & H.)  Even if Avaya had given some of the records to the Debtors' financial advisers, they would have had no reason to keep them given Avaya's undertaking

not simply lost or accidentally destroyed.  Cf. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995) (concluding that the district court did not err in refusing to draw spoliation inference where there was no evidence that missing files were intentionally destroyed as opposed to misplaced or lost).  Avaya's conduct is exacerbated by the fact that at the time the records were destroyed, Avaya had a contractual duty to maintain them.  (Appendix at A 36.)

Further, when it destroyed the Debtors' books and records, Avaya had not paid all the liabilities it had assumed.[6] Therefore, it should have anticipated litigation over its failure to comply with the APA.  See, e.g., Silvestri v. General Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001) (noting that "[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation"); Shamis, 34 F. Supp. 2d at 888-89 (inquiry is whether the party destroying documents "knew or should have known that the destroyed evidence was relevant to pending, imminent or reasonably foreseeable litigation."); Howell

---

to preserve all the records for a period of seven years.

   6  The Trustee asserts that Avaya admitted it owed $500,000 of the assumed liabilities at the time the documents were destroyed; Avaya disputes this.  It is unnecessary to decide this dispute, however, because Avaya admits that it still owes in excess of $300,000 as of today.

v. Maytag, 168 F.R.D. 502, 505 (M.D. Pa. 1996) (holding that a party who has reason to anticipate litigation has an affirmative duty to preserve evidence which might be relevant to the issues in the lawsuit).

Finally, to the extent that the records are necessary for the Court to determine the merits of this suit, the destruction was prejudicial to the Trustee. In that event, there would be a basis for sanctioning Avaya for its failure to maintain the Debtors' financial records. See, e.g., Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc., 133 F.R.D. 166, 170 (D. Co. 1990) (granting default judgment against party which had destroyed evidence essential to plaintiff's case); Wm. T. Thompson Co. v. General Nutrition Corp., 593 F. Supp. 1443, 1456 (C.D. Cal. 1984) (holding that defendant's destruction of relevant records warranted both monetary sanctions and ultimate sanction of default judgment against it); In re Wechsler, 121 F. Supp. 2d 404, 429 (D. Del. 2000) (concluding that owner's intentional destruction of ship, thereby precluding an inspection to determine the cause of a fire aboard, warranted judgment against it). See generally 7 Moore's Federal Practice - Civil § 37.120 (2006).

The determination of the proper sanction, however, depends on the extent of any prejudice suffered by the Trustee. If the Trustee is successful on the legal issues presented in his motion

11

for partial summary judgment, for example, no prejudice is shown

and no sanction is mandated.  The Court will therefore consider

the appropriate sanction in the context of its decision on the

merits of the cross motions for summary judgment.

    B.   <u>Unjust Enrichment</u>

    Initially, Avaya argues that where there is no dispute that

a valid contract governing the parties' relationship exists,

"recovery under an unjust enrichment claim is precluded as a

matter of law." <u>Liafail, Inc. v. Learning 2000, Inc.</u>, Nos. C.A.

01-599 GMS, C.A. 01-678 GMS, 2002 WL 31667861, at *13-14 (D. Del.

Nov. 25, 2002).  In his Complaint, the Trustee alleges that the

APA constitutes a valid, binding agreement between the parties.

(<u>See</u> Complaint at ¶¶ 11, 17-18.)  As it does not dispute this

assertion, Avaya contends that summary judgment in its favor

dismissing the Trustee's unjust enrichment claim is warranted.

<u>Liafail</u>, 2002 WL 31667861, at *13-14.

    The Trustee responds that Delaware law permits a claim for

unjust enrichment where an express contract exists, so long as

the obligations or rights that are the subject of that claim are

not exclusively governed by the contract at issue.  <u>Fitzgerald v.</u>

<u>Cantor</u>, No. C.A. 16297, 1998 WL 326686, at *6 (Del. Ch., June 16,

1998).

    In this case, however, the Trustee has made no effort to

demonstrate that his claims are not exclusively governed by the

APA; nor is any of the destroyed evidence relevant to this issue. Therefore, because a binding contract exists between the parties that adequately addresses each party's rights and duties, the Court concludes that a claim for unjust enrichment is not available.  <u>Liafail</u>, 2002 WL 31667861, at *13-14.  <u>See also</u>, <u>In re Crown-Simplimatic, Inc.</u>, 299 B.R. 319, 327 (Bankr. D. Del. 2003) (concluding that "[b]ecause a binding contract exists that adequately addresses each party's rights and duties, [the plaintiff] cannot recover under the quasi-contractual theory of unjust enrichment.").  Therefore, the Court will grant Avaya's motion for summary judgment, in part, and will dismiss the Trustee's unjust enrichment claim.

    C.   <u>Breach of Contract</u>

In this case, the Trustee seeks a judgment against Avaya in the amount of $1,888,410.52 for unpaid claims allegedly assumed by Avaya under the APA.  (<u>See</u> Exhibit A to Trustee's Motion for Partial Summary Judgment; Supplement in Support of Trustee's Motion for Partial Summary Judgment.)  The Trustee asserts that Schedule 1.03 of the APA requires that Avaya pay all claims which arose after the December 31, 2000, Balance Sheet, including the claims listed on the Debtors' bankruptcy schedules or on proofs of claim filed by creditors.

Avaya disagrees.  Avaya asserts that Schedule 1.03 cannot be read so broadly.  Rather, it argues that the only liabilities

assumed are those which were reflected in the Debtors' books and records as of the Closing Date, except for three subcategories of claims that are not at issue here.

The parties' dispute requires an interpretation of Schedule 1.03 of the APA, which provides:

Schedule 1.03: Assumed Liabilities

> 1. All liabilities listed on the Company Balance Sheet (exclusive of the liability listed thereon that is an Excluded Liability pursuant to Section 1.04(v)) and <u>all liabilities accrued or recorded after the Balance Sheet Date in the ordinary course of business consistent with past practice to the extent not satisfied prior to the Closing Date</u>, provided that the aggregate amount of liabilities assumed pursuant to this paragraph shall not exceed $30,000,000, and provided further that in no event shall Buyer assume liabilities for any advisers to any Seller in connection with the Chapter 11 Case or any Existing Claims in excess of an aggregate of $1,000,000. In addition, Buyer shall assume each of the liabilities and obligations set forth in clauses a - c below, and such liabilities shall count against the $30,000,000 limitation in the foregoing sentence to the extent such liabilities are or should be accrued or recorded on the Company balance sheet based on GAAP applied on a consistent basis and have not been satisfied at the Closing.

(Appendix at A 10-11 (emphasis added).)

1.  <u>Meaning of "Accrued"</u>

    a.  <u>Plain Meaning</u>

The Trustee argues that under the plain language of Schedule 1.03, Avaya is liable for any and all liabilities incurred by the Debtors after the Balance Sheet Date (December 31, 2000) that were not paid prior to the Closing Date (April 11, 2001).

Specifically, he argues that "accrued" and "incurred" are interchangeable.

Avaya argues, in contrast, that "accrued" means a liability that has been recorded on the Debtors' books and records. Avaya contends, therefore, that the only liabilities it assumed are those listed on the Debtors' books and records, which are reflected on the Final Schedule submitted to Avaya at the Closing. Avaya's argument is premised on the meaning of "accrual" in financial parlance, which describes liabilities that are reflected by an actual entry in financial books of account. Under accounting literature, liabilities should be recorded once an invoice is received. Even before an invoice is received, however, some liabilities should be reflected on a company's books (i.e., accrued) based on reliable estimates.[7] Therefore, Avaya asserts that "accrued or recorded" in Schedule 1.03 referred to liabilities that were somewhere reflected in the

_____

[7] The Financial Accounting Standards Board ("FASB") Statement of Financial Accounting Concepts No. 6 provides that "[a]ccrual is concerned with expected future cash receipts and payments: it is the accounting process of recognizing assets or liabilities and the related liabilities, assets, revenues, expenses, gains, or losses for amounts expected to be received or paid, usually in cash, in the future." FASB's Statement of Financial Accounting Standards No. 5 notes that an "estimated loss from a contingency . . . shall be accrued by a charge to income" if it is probable the loss will be incurred and it "can be reasonably estimated." AICPA Accounting Research Bulletin No. 43 states that the "concept of current liabilities would include estimated or accrued amounts which are expected to be required to cover expenditures within the year for known obligations" whose precise amount or payee is yet unknown.

Debtors' books and records by an accounting entry.

The Trustee argues in response that "accrued" is interchangeable with "incurred."  As support, the Trustee cites to an earlier edition of Black's Law Dictionary, which defined the word "accrue" as meaning, among other things, "was incurred." Black's Law Dictionary 20-21 (6th ed. 1990).

The Court finds this argument of the Trustee unpersuasive. Neither the 7th edition (published in 1999 and therefore the version in existence at the time the APA was drafted), nor the current 8th edition (published in 2004) provide that "accrue" is interchangeable with "incur."  See Black's Law Dictionary 21 (7th ed. 1999); Black's Law Dictionary 22 (8th ed. 2004).

The Trustee further argues that if Avaya's interpretation that "accrued" means "recorded on the Debtors' books and records" was correct, the term "or recorded" found after it in Schedule 1.03 would be wholly unnecessary.  Avaya's argument in essence is that "accrued or recorded" means "accrued and recorded" in the Debtors' books and records prior to the Closing Date.  The Trustee asserts that Avaya's interpretation is incorrect because it would make part of the language of Schedule 1.03 meaningless surplusage.

Avaya similarly argues that if the Trustee's interpretation were correct, then much of the sentence would be surplusage.  If the parties had intended Avaya to assume all liabilities of the

16

Debtors arising after the Balance Sheet Date (as the Trustee contends), the provision would have said so more directly by stating simply that "Avaya assumes all liabilities of the Debtors to a maximum of $30,000,000."

In interpreting a contract, the Court should strive to avoid an interpretation where any provision is rendered meaningless or mere surplusage.  See, e.g., Rag Am. Coal Co. v. AEI Res., Inc., No. CIV. A. 16728, 1999 WL 1261376, at *5 (Del. Ch. Dec. 7, 1999) (citing Sonitrol Holding Co. v. Marceau Invetissements, 607 A.2d 1177, 1183 (Del. 1992)).  In this case, however, both parties' interpretation would render some of the language of Schedule 1.03 mere surplusage.  The Court is unable to determine, from a plain reading of the provision, which interpretation is correct.  Therefore, the Court must refer to other evidence to determine the parties' intent.  See, e.g., Eagle Indus., Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232-33 (Del. 1997) (concluding that if there is any ambiguity in the meaning of a contract, the court may consider parol evidence of the parties' intended meaning).

> b.    Prior Negotiations

Avaya argues that the evidence shows that during the negotiations of Schedule 1.03, the Debtors' counsel twice proposed language that would have required Avaya to assume liabilities that were not reflected in the Debtors' books as of

the Closing Date, but Avaya steadfastly refused to accept that language.  First, the Debtors proposed language for Section 1.03 that would have made Avaya responsible for "all liabilities [of Debtors] arising after" December 31, 2000, subject only to the $30 million limitation.  (See Appendix at A 64.)  Avaya rejected this proposal.  Avaya contends that the Debtors made a second proposal, which would have made Avaya accountable for all liabilities "incurred after" December 31, 2000, which Avaya rejected as well.

The Trustee argues in response that during negotiations Avaya tried to get a more particularized definition of assumed liabilities that would specifically identify by name and amount each and every liability to be assumed by Avaya under the APA. (Opening Brief in Support of Chapter 11 Trustee's Motion for Partial Summary Judgment, Exhibit B at ¶ 4.)  This was rejected by the Debtors who agreed only to limit liabilities to $30 million.  (Id.)  Avaya also tried to have attached to the Sale Order, a list of all assumed liabilities by payee and amount. (Id. at ¶ 5 & Exhibit C.)  The Debtors again rejected this suggestion.  (Id., Exhibits D & E at 115.)  As a result, Schedule 1.03 only provides categories of assumed liabilities and does not contain or refer to a fixed list of specific assumed liabilities.

The Trustee further cites an email exchange between the parties as support for his conclusion that the parties intended that all "incurred" debts were assumed.  Counsel for the Debtors, in arguing against having a specific listing of claims, stated: "If, as one of your earlier e-mails suggests, the schedule was more specific it would necessarily exclude liabilities that I understood would be assumed, e.g., incurred but not invoiced debts."  (Id., Exhibit D.)  In response, counsel for Avaya states in part: "[w]e certainly are free to list the incurred but not invoiced debts . . . . " (Id., Exhibit F.)  Also, in negotiating the Sale Order, the Trustee asserts that Avaya's counsel agreed that Schedule 1.03 encompasses liabilities which were "incurred" pre-closing.  (Id.)

The Court is more persuaded by the evidence presented by Avaya.  The Trustee's references are often to statements made after the APA was executed and, therefore, were not incorporated into the APA.  In contrast, the Court finds that the parties' express rejection of a version of Schedule 1.03 which would have obligated Avaya to assume all "incurred" obligations of the Debtors is persuasive evidence that the parties intended "accrued" to mean something other than "incurred."  Therefore, the Court is persuaded that the parties intended the term "accrued" to have its financial meaning, that is, an obligation which must be estimated on the Debtors' books and records for

purposes of accounting.  This is bolstered by the testimony of
the Debtors' former accounting personnel who stated that in the
ordinary course of the Debtors' business, they made a journal or
other book entry for accrued expenses.  This is further confirmed
by the schedule that was presented by the Debtors to Avaya on
April 20, 2001 (the "Final Schedule").  (Appendix at A 186-88.)
The Final Schedule had several categories of obligations which
Avaya assumed, including "Trade AP", "Other Accounts Payable",
and "Accrued Liabilities."  Mark Thompson, the former Vice
President of Finance of the Debtors, testified that the detail
supporting those categories of assumed liabilities all came from
the Debtors' books and records.  Therefore, the Court concludes
that Avaya assumed only obligations that were reflected in the
Debtors' books and records.

The parties still disagree, however, about what liabilities
were reflected on the Debtors' books and records and, therefore,
were assumed by Avaya.  It is here where the destroyed documents
become crucial.

      2.   <u>Final Schedule</u>

Avaya asserts that the liabilities it assumed are those
definitively listed on the Final Schedule.  (Appendix at A 186-
88, 292-95.)  The Final Schedule was prepared by Thompson.  (<u>Id.</u>
at A 285, 292-95.)  The cover memo enclosing the Final Schedule
notes that pursuant to the parties' agreement the Final Schedule

was submitted "in lieu of" the estimate of assumed liabilities required by Schedule 1.03.  (<u>Id.</u> at A 186.)  Thompson testified that the Final Schedule represents the total amount of liabilities ($22,549,000) which were reflected on the Debtors' books and records as of April 20, 2001.  (<u>Id.</u> at A 283-96, 187.) As the Final Schedule reflects the total amounts "accrued or recorded" as of April 20, 2001, Avaya contends that it represents all the liabilities assumed by it under the APA.

The Trustee argues, however, that the Final Schedule is not conclusive evidence of the identity or amount of assumed liabilities.  Under the APA, the Debtors were supposed to provide Avaya, within three business days of the Closing Date, an estimate of what the assumed liabilities would be as of that date.[8]  (<u>Id.</u> at A 10-11.)  This schedule was to be the basis for

---

[8]  Section 1.03 provides in this regard:

  No more than 3 business days prior to the Closing Date, Company shall deliver to Buyer a schedule in reasonable detail showing Company's estimate of the Assumed Liabilities as of the Closing Date.  Buyer shall have the right, to review this schedule of Assumed Liabilities, and the parties agree to discuss in good faith any comments or questions that Buyer may have with respect to such schedule.  From and after the Closing, Buyer shall have the right to confirm the accuracy of the schedule for a period of 5 business days after the Closing.  If, based on such review, Buyer believes that the Assumed Liabilities as of the Closing Date exceeds $30,000,000, the parties agree to discuss in good faith Buyer's comments, and any disputes that the parties cannot resolve within 2 business days will be resolved expeditiously before the Bankruptcy Court.  If the Assumed Liabilities as of the Closing Date, as reflected on the schedule prepared by

21

Avaya to determine whether the assumed liabilities exceeded $30 million.  The Trustee argues that the Final Schedule merely provides an estimate and not the total Liabilities that Avaya agreed to assume under the APA.  In support of his position, the Trustee notes that the cover letter states that the Final Schedule is "a schedule of the Company's estimate of the Assumed Liabilities."  In fact, the word "estimate" is used six times throughout the document.  (<u>Id.</u> at A 186-88.)

In response to the Trustee's argument, Avaya asserts that the use of the word "estimate" in the Final Schedule and cover letter is consistent with Avaya's interpretation of Schedule 1.03.  Because "accrued" liabilities must be recorded prior to the receipt of a final bill or invoice, they are of necessity estimates.  (<u>Id.</u> at A 280 ("that's the point of accruals . . . estimating what your liabilities are").)  Additionally, Avaya noted that the Debtors did, in fact, submit the estimated schedule to Avaya on April 5, 2001, and that the Final Schedule was submitted on April 20, 2001, and reflects the amount of assumed liabilities agreed upon by the parties after the Closing Date.  (<u>Id.</u> at A 183-88.)  Avaya notes that the April 5, 2001, schedule was marked "ESTIMATE" while the April 20, 2001, schedule

---

Company or as revised upon resolution of any comments by Buyer, exceed $30,000,000, then the provisions of Section 5.14 shall apply.

(Appendix at A 11.)

was plainly marked "FINAL."  (<u>Id.</u>)

The Court agrees with the Trustee that the Final Schedule does not represent a final and exclusive list of liabilities assumed by Avaya.  Rather, the Final Schedule provides only a broad categorical description of the types of liabilities to be assumed and an estimate of the amount owed in each of those categories; it does not include a specific listing of liabilities to be assumed, particularly with respect to the accrued liabilities.[9]  The Final Schedule bears no hallmarks of finality. It uses "estimate" six times, reflects dollar figures rounded to the nearest thousand and makes almost no reference to specific creditors.  Therefore, the Court concludes that the Final Schedule was not a conclusive list of the liabilities assumed by Avaya.[10]  The Court concludes instead that the liabilities assumed by Avaya are the actual liabilities that were reflected on the Debtor's books and records.

---

[9]  The trade payables ($7,080,000) were included as a line item and detailed in an attached Aged Payables Report dated that same date.  (<u>Id.</u> at A 187, 189-247, 301.)  The Final Schedule also included "Accrued Liabilities" as a line item ($5,513,000) and attached a one page list of the categories of accrued liabilities.  (<u>Id.</u> at A 186-88.)  The remainder of the assumed liabilities (in excess of $8 million) were in the deferred revenues category, which represented prepayment by customers for services which Avaya became obligated to provide after the Closing Date.

[10]  This is confirmed by the fact that the Avaya employees did not actually use the Final Schedule in paying the assumed liabilities.  (Appendix at A 296.)

3.    Bankruptcy Schedules

The Trustee argues that the Debtors' bankruptcy schedules reflect liabilities assumed by Avaya.  He notes that the Debtors' bankruptcy schedules were executed by Thompson on April 10, 2001, only one day prior to the Closing Date.  Thompson confirmed that the bankruptcy schedules reflect the Debtors' liabilities as they were shown in the Debtors' books and records.  (Opening Brief, Exhibit G at 146-47.)  Consequently, the Trustee asserts that the debts listed on the bankruptcy schedules are assumed liabilities under the APA.  The Trustee has compared the liabilities listed on the bankruptcy schedules with the evidence he obtained in discovery of Avaya's payment of claims and contends that at least $429,786.49 in trade claims and $302,134.97 in scheduled tax claims were never paid by Avaya.  (Reply Brief in Support of Chapter 11 Trustee's Motion for Partial Summary Judgment, Exhibit D at ¶¶ 9, 11-12; Supplement in Support of Chapter 11 Trustee's Motion for Partial Summary Judgment, Exhibit B at ¶¶ 12-13, 16.) Thus, the Trustee asserts that Avaya owes $731,921.46 in scheduled (and therefore assumed) liabilities.

Avaya disagrees, asserting that the bankruptcy schedules are irrelevant.  It asserts that they are not the books and records kept by the Debtors in the ordinary course of business and that Schedule 1.03 did not provide for the assumption of all liabilities listed on the bankruptcy schedules.

The Court rejects Avaya's arguments.  The Debtors'
bankruptcy schedules reflect liabilities that were on the
Debtors' books and records as of the date of the filing of the
schedules.  (Opening Brief, Exhibit G at 146-47.)  Because Avaya
assumed all liabilities accrued or recorded on the Debtors' books
and records, it is responsible for the claims listed on the
Debtors' schedules.  Avaya has presented no evidence to refute
the Trustee's proof that $752,696.76 in scheduled (and therefore
assumed) liabilities have not been paid by it.[11]  Based on the
evidence presented by the parties, judgment in the Trustee's
favor in this amount is warranted.

       4.   <u>Proofs of Claim</u>

The Trustee argues that Avaya assumed the liabilities that
are reflected on the claims register in this case.  He contends
that a debt is "recorded" on the Debtors' books and records when
a proof of claim is filed and the obligation is listed in the
claims register, because the claims register was the Debtors'
only remaining means of recording an obligation once their books
and records were transferred to Avaya on the Closing Date.

Avaya disagrees and reiterates its argument that the assumed
liabilities were only those which were actually reflected by
accrual or recording on the Debtors' books and records and that

---

[11]  In fact, Avaya has conceded that it owes a portion of
these claims.  Specifically, Avaya admits $202,165.46 in trade
payables and $321,383.83 in tax liabilities remain unpaid
obligations which it assumed under the APA.

the claims register is not part of the Debtors' books and records.  It further argues that the book entry must have been made before the Closing Date according to the language of Schedule 1.03.  The Trustee responds that the language "prior to the Closing" contained in Schedule 1.03 modifies only the phrase immediately preceding it: "to the extent not satisfied."  The Trustee argues, therefore, that any debt recorded or accrued on the Debtors' books and records in the ordinary course of business at any time, even after the Closing Date, was assumed by Avaya.

The Court agrees with the Trustee's interpretation of the contract.  There is nothing to suggest that "prior to the Closing Date" modifies the entire sentence rather than simply the clause immediately before it.  Thus, Schedule 1.03 eliminated liabilities from assumption if they were paid before the Closing Date.  Avaya's argument that the assumed liabilities only included those which were recorded before the Closing Date is contradicted by the activities of the Debtors' employees hired by Avaya who continued to process invoices they received in the ordinary course of business post-Closing.  The Court, however, disagrees with the Trustee's contention that the filing of a proof of claim was a "recording" in the Debtors' books and records done "in the ordinary course of business consistent with past practice" as required by Schedule 1.03.

The Trustee asserts nonetheless that Avaya has admitted its liability for filed proofs of claim.  He relies on an email sent by Janet Poriadjian, an Avaya employee responsible for setting the account policy for and defining the scope of assumed liabilities under Schedule 1.03, which he quotes as stating:

> . . . please keep in mind that we purchased "certain assets and liabilities" and not the Quintus Corporation.  We have no obligation to pay the vendors that may think that they have an economical right to be paid by Avaya, because they may not, <u>unless the vendor filed a claim through the original bankruptcy courts and/or we've agreed to assume their particular liability</u>.  All vendors that are not on our originally assumed list of liabilities shall pursue their 'right' to get paid by filing a claim to the bankruptcy courts . . . wherever Quintus filed for bankruptcy.

(Opening Brief, Exhibit I (emphasis added).)

Avaya contends that the Trustee grossly distorts Ms. Poriadjian's email.  Reproduced more fully, the email states:

> Also, for Mark's benefit, please keep in mind that we purchased "certain assets and liabilities" and not the Quintus Corporation.  We have no obligation to pay the vendors that may think they have an economical right to be paid by Avaya, because they may not, unless the vendor filed a claim through the original bankruptcy courts and/or we've agreed to assume their particular liability.
> All vendors that are not on our originally assumed list of liabilities, should pursue their 'right' to get paid by filing a claim to the bankruptcy courts in Dublin (or wherever Quintus filed for bankruptcy).
> If there is a vendor that comes to us with a claim . . . we should look to the original liability balance that we assumed (i.e. the $22M liability list).  <u>If they are not on that list, legally we owe them nothing.</u>

(<u>Id.</u> (emphasis added).)

27

The Court agrees with Avaya that the Poriadjian email is not an admission by Avaya that it owes the claims evidenced by proofs of claim.  Therefore, the Court concludes that the claims listed on the claims register, to the extent they were not otherwise recorded in the Debtors' bankruptcy schedules or books and records, were not assumed by Avaya.

5.  <u>Books and Records</u>

This, of course, leads back to the question of what was reflected on the Debtors' books and records as liabilities assumed by Avaya.  The former employees of the Debtors who were hired by Avaya to handle the payment of the assumed liabilities testified that the Debtors' books and records consisted of a general ledger, accounts payable ledger and other sub-ledgers, including tax sub-ledgers.  In addition, they testified that when the Debtors received invoices, whose amount the Debtors disputed, the Debtors would reflect that reduction on the face of the invoice and only the amount the Debtors believed was due would be recorded in the accounts payable ledger.  They also testified that the Debtors' books and records (both hard copies and electronic versions) were transferred to Avaya on the Closing Date.  Thereafter, those documents were regularly archived by Avaya.

After commencement of this action, the Trustee sought the Debtors' books and records that were relevant to his Complaint.

When Avaya failed to produce them, the Trustee filed a motion to compel their production which was granted, in part, by Order dated October 14, 2005. Avaya still did not provide all the relevant documents; namely, Avaya has not provided copies of the Debtors' entire general ledger from the Closing Date, the applicable tax sub-ledgers, and the vendor files.

After discovery was completed, however, Avaya did produce some of the Debtors' books and records, arguing that they support its assertion that it paid all the obligations it assumed. (See Amended Sur-reply Brief of Defendant Avaya, Inc., in Opposition to the Motion for Sanctions for Spoliation of Evidence of the Chapter 11 Trustee, Exhibits 2-4, 10.) The fact that Avaya did produce a portion of the Debtors' general ledger and tax sub-ledgers after the conclusion of discovery does not help its cause. A party cannot selectively preserve "relevant" documents and only present those that it finds favorable to its case, at a time when it finds it convenient. See, e.g., Shamis, 34 F. Supp. 2d at 890 (concluding that the plaintiff's assertion that he kept and produced all the relevant documents while allowing the destruction of 3,000 boxes of documents was unavailing because "a determination of what is and is not relevant varies substantially based on the parties' different theories of the case.").

Rule 37 of the Federal Rules of Civil Procedure expressly provides the Court the power to sanction a party for failure to

comply with a discovery order.  Fed. R. Civ. P. 37.  Sanctions available under that Rule include striking pleadings, making inferences, granting attorneys' fees, and other appropriate actions.  Id.

In addition, the Court's inherent power to oversee litigation before it, gives the Court the authority to sanction Avaya for its failure to produce documents relevant to this case. See, e.g., Silvestri, 271 F.3d at 590 ("The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation . . . ."); Shepherd, 62 F.3d at 1479 ("As old as the judiciary itself, the inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments.").

Appropriate sanctions include (1) an inference that the evidence would have been unfavorable to the party that destroyed it, (2) the preclusion of any evidence to contradict the missing evidence, and (3) the entry of judgment in favor of the other party.  Schmid, 13 F.3d at 79 (citations omitted); Howell, 168 F.R.D. at 505.

As noted above in Part III.A.2, the Court has concluded that Avaya intentionally destroyed evidence after it should reasonably

have anticipated litigation about its failure to pay all assumed liabilities.  In this case, Avaya did timely produce the accounts payable ledger which was attached to the Final Schedule and which it asserts reflects all the trade payables it assumed.  The accrued liabilities, including the tax claims, are more problematic.  Only a one page summary of accrued liabilities was attached to the Final Schedule.  (Appendix at A 188.)  Avaya did not produce all the Debtors' books and records relevant to those claims, namely the general ledger, tax sub-ledgers or the vendor files, which would permit the Trustee or the Court to determine what accrued claims were reflected on the Debtors' books and records at the Closing Date and remain unpaid.

Avaya asserts that those documents are not essential to the Trustee's claim because the Final Schedule shows what the Debtors' books and records contained at that time.  However, without the Debtors' books and records, this thesis cannot be tested.  <u>Shamis</u>, 34 F. Supp. 2d at 890.  Avaya further asserts that the vendor files are irrelevant because the invoices would only reveal a number higher than the Debtors actually recorded in their books and records.  Avaya asserts that it assumed only the amount of the claim reflected in the Debtors' books and records and not the amount that the vendor asserts is due.

The Court disagrees.  Avaya assumed certain liabilities, both accrued and recorded in the Debtors' books and records.

Nguyen testified that the Debtors made notations on the face of
the vendors' invoices.  (Reply Brief in Support of Chapter 11
Trustee's Motion for Summary Judgment, Exhibit G.)  Therefore,
the Court concludes that those invoices were part of the Debtors'
books and records.  Furthermore, to the extent that the amount
actually due to a creditor whose claim was accrued or recorded on
the Debtors' books and records exceeds the amount the Debtors
listed on their general ledger, the Court concludes that Avaya
owes the correct amount.  The Final Schedule made this clear; it
repeatedly referred to the amounts listed as estimates, although
Avaya's liability was ultimately capped at $30 million.

        Therefore, the Court concludes that all the Debtors' books
and records, including the vendor files, general ledger and sub-
ledgers, are relevant to the Trustee's claims and should have
been preserved and produced in discovery.  The destroyed evidence
is not simply relevant to this case but goes to the heart of the
Trustee's suit: what claims were assumed by Avaya that remain
unpaid.  Further, Avaya did not merely alter the evidence, it
destroyed it.  Consequently, the Court concludes that the most
severe sanction of judgment against Avaya is warranted.  See,
e.g., Computer Assocs., 133 F.R.D. at 170 ("Destroying the best
evidence relating to the core issue in the case inflicts the
ultimate prejudice upon the opposing party.  I find and conclude
that no alternate sanction short of a default judgment would

32

adequately punish [the defendant] and deter future like-minded litigants."); Thompson, 593 F. Supp. at 1456 (holding that default judgment was appropriate where "destruction of documents and records . . . deprived [opposing party] of the opportunity to present critical evidence on its key claims to the jury.").

Even if the Court did not find that the most severe sanction was warranted by Avaya's conduct, the result would be the same. If the Court applied the spoliation inference and inferred that the destroyed (or withheld) documents would be unfavorable to Avaya's position, it must conclude that the Debtors' books and records would include the claims of those creditors who have filed proofs of claim.  Similarly, if the Court were to preclude Avaya from presenting any evidence that the Debtors' books and records did not include those claims or included them in lesser amounts, the Court would have to conclude that the Debtors' books and records were consistent with the creditors' records as reflected in their proofs of claim.  Thus, entry of judgment in favor of the Trustee is nothing more than what would result from the other available sanctions.[12]

---

[12]  Avaya asserts that the Trustee has only a breach of contract claim for its failure to preserve the Debtors' books and records.  Even if that were so, the damages suffered by the Trustee for that breach would include the amount he could not prove that Avaya owes because of the destruction of the records by Avaya.  Therefore, the result would still be the same: judgment in favor of the Trustee.

As a result, the Court concludes that judgment should be entered in favor of the Trustee for all claims listed in the Debtors' bankruptcy schedules and on the claims register which the Trustee contends is $1,888,410.52.[13]

D.    Attorneys' Fees

The Trustee also seeks attorneys' fees as a sanction for Avaya's failure to produce the Debtors' books and records.  Such a sanction is available under Rule 37.  Fed. R. Civ. P. 37. Because the Court is granting a more severe sanction, judgment in the Trustee's favor, the Court will not award attorneys' fees as an additional sanction.

IV.    CONCLUSION

For the foregoing reasons, the Court will grant, in part, Avaya's Motion for Summary Judgment and dismiss the Trustee's Unjust Enrichment count of the Compliant.  The Court will also grant, in part, the Trustee's Motions for Partial Summary

---

13  One of the claims is a $228,564 rejection damages claim assumed by Avaya as the result of a letter agreement executed on April 11, 2001.  (See Supplement at Exhibit A.)  While Avaya admits it owes that claim, it asserts that it is not the proper subject of the Trustee's summary judgment motion which is based only on Schedule 1.03 of the APA.  The Court rejects this argument as elevating form over substance.  The letter agreement was executed on the Closing Date and appears to clarify obligations of Avaya under the APA; the Trustee's Complaint seeks to recover sums due by Avaya under the APA.  The Court will not require the Trustee to incur the additional expense of prosecuting another complaint to collect an obligation that Avaya admits it owes.

Judgment and for Sanctions.

An appropriate Order is attached.


Dated: October 27, 2006                    BY THE COURT:


Mary F. Walrath
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| QUINTUS CORPORATION, et al., | ) Case No. 01-00501 through |
| | ) Case No. 01-00503(MFW) |
| | ) |
| Debtors. | ) Jointly Administered |
| _____ | ) |
| | ) |
| | ) |
| QUINTUS CORPORATION, et al., | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adversary No. 04-53074 |
| | ) |
| | ) |
| AVAYA, INC., | ) |
| | |
| Defendant. | |
| _____ | |

**ORDER**

**AND NOW**, this **9th** day of **JUNE, 2008**, upon consideration of
the decision of the District Court remanding this proceeding, the
evidence presented at the hearings held on February 12 and April
15, 2008, the Court's decision dated October 27, 2006, and the
pleadings filed by the parties, and for the reasons set forth in
the accompanying Opinion, it is hereby

**ORDERED** that an amended judgment is entered in favor of the
Plaintiffs against the Defendant in the amount of $1,535,979.57.

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

cc:  Kimberly E.C. Lawson, Esquire [1]

---

[1] Counsel shall serve a copy of this Order and the
accompanying Opinion on all interested parties and file a
Certificate of Service with the Court.

SERVICE LIST

Kimberly E.C. Lawson, Esquire
John G. Harris, Esquire
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Counsel for the Chapter 11 Trustee

Jeffrey Goddess, Esquire
Rosenthal, Monhait & Goddess, P.A.
919 N. Market Street, Suite 1401
Wilmington, DE 19801
Counsel for Avaya, Inc.

James D. Arden, Esquire
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
Counsel for Avaya, Inc.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| QUINTUS CORPORATION, et al., | ) | Case No. 01-00501 through |
| | ) | Case No. 01-00503(MFW) |
| Debtors. | ) | |
| _____ | ) | Jointly Administered |
| | ) | |
| QUINTUS CORPORATION, | ) | |
| MUSTANG.COM, INC., and | ) | |
| ACUITY CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 04-53074 |
| | ) | |
| AVAYA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### OPINION[1]

This matter is before the Court on remand from the District
Court of an appeal of the Court's decision dated October 27, 2006
(the "October 27 Decision"), which granted judgment in favor of
the Plaintiffs against Avaya, Inc. ("Avaya") in the amount of
$1,888,410.52.  After consideration of additional evidence and
the arguments of the parties, the Court will enter judgment in
favor of the Plaintiffs against Avaya in the amount of
$1,535,979.57.

_____

    1  This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

I.    <u>BACKGROUND</u>

The factual background of this case is described in the
October 27 Decision and will be repeated here only briefly.  On
February 22, 2001, Quintus Corporation ("Quintus") and its
subsidiaries (collectively the "Debtors") filed voluntary
petitions under chapter 11 of the Bankruptcy Code.  On that same
day, the Debtors executed an Asset Purchase Agreement ("APA")
with Avaya for the sale of substantially all the Debtors' assets.
In exchange for the Debtors' assets, Avaya agreed to assume
certain of the Debtors' liabilities not to exceed $30 million and
to pay $30 million in cash at closing.  The sale was approved by
the Court on April 6, 2001, and the sale closed on April 11, 2001
(the "Closing Date").

Subsequently, on January 30, 2002, Kurt F. Gwynne (the
"Trustee") was appointed as the chapter 11 trustee in the
Debtors' jointly administered cases.  On March 18, 2004, the
Trustee filed an adversary complaint against Avaya asserting
breach of contract and unjust enrichment for failure to pay
certain liabilities assumed under the APA.  Avaya filed an answer
and affirmative defenses on April 19, 2004.  After discovery,
both parties moved for summary judgment.

Avaya sought dismissal of the adversary complaint and the Trustee sought a judgment against Avaya for its material breach of the APA based on the evidence garnered in discovery and on the fact that Avaya had failed to produce relevant documents essential to the Trustee's case which were in Avaya's sole control and which Avaya was obligated to maintain pursuant to the APA.

The Court granted the Trustee's motion for summary judgment, finding that under section 1.03 of the APA, Avaya had assumed and agreed to pay all obligations that were reflected in the Debtors' books and records which arose after the December 31, 2000, Balance Sheet. Quintus Corp. v. Avaya, Inc. (In re Quintus Corp.), 353 B.R. 77, 82-84 (Bankr. D. Del. 2006). The Court found, however, that Avaya had destroyed the Debtors' books and records, despite having a contractual obligation to maintain them after the Closing Date. Id. Because that destruction made it difficult to determine what debts were listed on the books and records and assumed by Avaya, the Court entered judgment against Avaya as a sanction for its spoliation of evidence. Id. at 84, citing Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) ("The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation . . . ."); Shepherd v. Am. Broad. Cos., Inc., 62 F.3d

1469, 1479 (D.C. Cir. 1995) ("As old as the judiciary itself, the inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments."); Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc., 133 F.R.D. 166, 170 (D. Colo. 1990) ("Destroying the best evidence relating to the core issue in the case inflicts the ultimate prejudice upon the opposing party. I find and conclude that no alternate sanction short of a default judgment would adequately punish [the defendant] and deter future like-minded litigants."); Wm. T. Thompson Co. v. General Nutrition Corp., 593 F. Supp. 1443, 1456 (C.D. Cal. 1984) (holding that default judgment was appropriate where "destruction of documents and records . . . deprived [opposing party] of the opportunity to present critical evidence on its key claims to the jury."). Judgment in the amount of $1,888,410.52 was entered in favor of the Trustee, which included liabilities listed on the Debtors' bankruptcy schedules filed a day before the Closing Date and claims filed by creditors in the bankruptcy case. Id. at 94.

The District Court found "no error in the bankruptcy court's entry of judgment against Avaya as a sanction for spoliation" of the evidence. In re Quintus Corp., Civ. No. 06-769-SLR, 2007 WL

4

4233665, at *3 (D. Del. Nov. 29, 2007).  The District Court was concerned, however, with the inclusion in the judgment of claims filed by creditors which had not been "tested against what records do exist or against a common sense approach to the claims process."  Id.  The District Court was unsure "whether the claims register (rejected at the outset by the bankruptcy court as an inappropriate reflection of the Debtors' books and records) will dictate what claims are paid and in what amounts for those claims not otherwise reflected in the Debtors' records, or whether the bankruptcy court is giving the Trustee close to a million dollars to use at his discretion."  Id.

On remand, the Court conducted hearings on February 12 and April 15, 2008.  The Court permitted Avaya to file a pleading outlining the claims to which it objected, which was filed on May 6, 2008.  The Trustee filed a response on May 23, 2008, and Avaya filed its reply on June 4, 2008.  The matter is ripe for decision.


II.  JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b).  This proceeding is core pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (N) & (O).

5

III.  <u>DISCUSSION</u>

A.  <u>Clarification</u>

The District Court's concern about the Court's use of the claims docket as a measure of the Trustee's damages is unfounded. The Court did reject the Trustee's argument that the claims docket could be characterized as the Debtors' books and records under the language of the APA. 353 B.R. at 90-91. When the Court determined that Avaya should be sanctioned for destroying the Debtors' books and records, however, the Court found that the claims docket could be used as an appropriate measure of the Trustee's damages. The claims docket reflects all proofs of claim filed by pre-petition (and therefore pre-Closing Date) creditors. Although the proofs of claim may differ from the Debtors' books and records, a properly filed proof of claim is prima facie evidence of the validity and amount of that claim. Fed. R. Bankr. P. 3001(1)(f). Therefore, in the absence of an objection to that claim and proof that the claim is invalid, the proof of claim must be allowed and is entitled to be paid.

B.  <u>Further Evidentiary Hearings</u>

At the initial remand hearing held on February 12, the Trustee reported what he had done to review the filed proofs of claim and determine their validity. The Trustee stated that he

6

had objected to claims to the extent he had evidence to dispute them (but without the Debtors' full books and records this was difficult). Several claims were also reduced by agreement. As of the February 12 hearing, the Trustee had resolved and paid claims totaling $1,324,287.77. There remained three claims in dispute.

The hearing was continued to April 15, 2008, to allow those claims to be resolved. In addition, the Court permitted Avaya to review all the proofs of claim that had been filed and to advise the Court of any claims to which it had an objection.

At the continued hearing, the Trustee presented as Exhibit T-1 a list of all the creditors' claims which he asserts should be included in the judgment. At the hearing, Avaya objected to only four claims on that exhibit. One of those claims, Broadwing/Argo Partners, had already been disallowed by the Court so the Trustee agreed it should not be included in the judgment. One claim was de minimis (the claim of Nortel Networks, Inc., for $166) and the Trustee, therefore, conceded that it need not be included in the judgment. The third claim (Level III Services, Inc.) had been scheduled at one cent less than the proof of claim and, therefore, Avaya conceded it could be included in the judgment. The amended judgment the trustee seeks is $1,535,979.57, which reflects the above reductions as well as the

7

reduction or disallowance of certain other claims.

The final claim to which Avaya objected was an AMEX claim which it asserted was the obligation of the employees who used the card and not the Debtors. Because Avaya had agreed to pay certain employees' obligations, however, the Court allowed the Trustee time to present evidence to establish that the AMEX claim was for employees' business expenses. To preserve the record, the Court also permitted Avaya to file a formal objection to the claims at issue and allowed the Trustee to respond to that objection. Avaya filed its objection on May 6, 2008, in which it objected to six tax claims in addition to the AMEX claim.

In response, the Trustee filed a motion to strike Avaya's objection to the tax claims because Avaya had not objected to them by the deadline the Court had originally set. He also responded to the substance of Avaya's objections.

C.    <u>Motion to Strike</u>

The Trustee argues that Avaya's objections to inclusion of claims in the amended judgment are tardy and should be stricken by the Court. The Trustee notes that the February 12 hearing was continued to give Avaya an opportunity to review the proofs of claim and to advise the Court and the Trustee which claims it felt were improperly included in the judgment. The Court

8

directed Avaya to file any such objection by April 1 (two weeks before the continued hearing). This gave Avaya seven weeks to review the claims and voice its objection. Avaya only objected to four claims; three of which were resolved between Avaya and the Trustee. At the April 15 hearing, the only remaining claim to which Avaya objected was the AMEX claim. The Court granted the parties additional time to confer on whether the AMEX claim should be included. Instead, Avaya filed an objection to an additional six claims. The Trustee asserts that this is improper and the Court should not consider Avaya's objection to those claims.

Avaya replies that at the April 15 hearing, it requested and obtained permission to file additional objections to the claims listed on T-1. Avaya stated at that time that it would be filing objections to some claims to preserve the record.

The Court agrees with Avaya that it was given permission to object to several claims, not just the AMEX claim. (Tr. 4/15/08 at 12:12-21, 14:6-17, 15:3-6.) Further, the Court finds that the Trustee has not been unduly prejudiced by Avaya's objections, because he has been able to submit a response addressing each of those claims. Therefore, the Court will consider the substance of Avaya's objections and the Trustee's response.

9

D.   <u>Substance of Objections to Claims</u>

1.   <u>Claim No. 116 by Ohio</u>

The Trustee seeks $200,000 to pay the claim of the Tax Commissioner of the State of Ohio which originally sought $519,784.49 for use taxes.  Avaya asserts that there is nothing on the claim itself to prove that the Debtors got notice of the tax liability before the Closing Date.  Further, Avaya notes that the Debtors disputed this claim, asserting that their books and records reflected that only $22,791.30 was owed.  Thus, Avaya asserts that only that amount should be included in the sanction judgment, rather than $200,000.

The Trustee responds that the claim of Ohio is for use taxes arising between May 1, 1997, and February 22, 2001, prior to the Closing Date of April 11, 2001.  Because the use taxes are based on the Debtors' sales, the Trustee contends that the Debtors' books and records (which reflect sales during that period) should reflect that liability.  Although the Debtors' schedules reflected only $22,791.30 as due, Ohio argued that the Trustee's reliance on the schedules alone was insufficient to overcome the prima facie validity of its proof of claim and that the Trustee should have produced the Debtors' tax returns and other relevant records.  Those are the records which Avaya destroyed thereby making it impossible for the Trustee to contest the claim.

10

The Court agrees with the Trustee.  The claim of Ohio is for use taxes that arose before the Closing Date and for which the Debtors would typically accrue an expense.  Therefore, the Court would expect to see evidence of those taxes in the Debtors' books and records.  Avaya's destruction of those books and records warrants inclusion of this claim in the amended judgment.

    2.  <u>Claim No. 330 by the Internal Revenue Service</u>

The Trustee seeks $12,128.33 to pay the claim of the IRS, which originally sought $31,459.73 in estimated withholding taxes.  Avaya contends that the taxes were not assessed until June 4, 2001, and therefore could not have been reflected on the Debtors' books and records as of the April 11, 2001, Closing Date.  Further Avaya asserts that the claim is an estimate only.

The Trustee responds that the IRS claim was for withholding taxes for the periods ending December 31, 1998, and December 31, 2000.  In negotiations, the Trustee was able to get the IRS to waive the taxes for the earlier period.  The claim for the latter period, although assessed after the Closing Date, was for a period prior to the Closing Date.  The Trustee further argues that the claim, which is for withholding taxes, is clearly the type of claim that should be reflected on the Debtors' payroll and tax records which were destroyed by Avaya.  The amount is estimated because the IRS asserted that the Debtors did not file

11

a tax return.  Again, the Trustee contends that any tax returns prepared by the Debtors would have been in the books and records destroyed by Avaya.

The Court agrees with the Trustee.  The IRS claim is for withholding taxes that arose before the Closing Date and for which the Debtors would typically accrue an expense.  Therefore, the Court would expect to see evidence of those taxes in the Debtors' books and records.  Avaya's destruction of those books and records warrants inclusion of this claim in the amended judgment.

### 3.   Claim No. 333 by Illinois

The Trustee seeks $599.41 to pay the claim of Illinois Employment Security, which originally sought $443.78 in estimated unemployment taxes.  Avaya objects to this claim because it is based on an estimate of liability due to the failure of one of the Debtor subsidiaries (Acuity Corporation) to file a tax return.  Avaya asserts that, consequently, it could not have been reflected on Quintus' books and records as of the Closing Date.

The Trustee responds that Avaya assumed the liabilities of all the Debtors, not just Quintus.  In fact, the Aged Payables Ledger, which Avaya asserts is the extent of the liability that it assumed, includes the accounts payable ledger of Acuity

12

Corporation.  Further, the Trustee notes that the Illinois claim is for unemployment liabilities incurred by Acuity during the first quarter of 2000, before the Closing Date.  The Trustee contends that this type of liability is the type that the Debtors would normally have accrued on their books and records.

The Court agrees with the Trustee.  The claim of Illinois is for unemployment taxes that arose before the Closing Date and for which the Debtors would typically accrue an expense.  Therefore, the Court would expect to see evidence of those obligations in the Debtors' books and records.  Avaya's destruction of those books and records warrants inclusion of this claim in the amended judgment.

4.  Claim No. 349 by Travis County

The Trustee seeks $18,229.16 to pay the claim of Travis County for ad valorem taxes.  Avaya objects to this claim because the delinquent tax statement issued by Travis County to support its claim is dated August 9, 2002.  Therefore, Avaya contends that it could not have been reflected on the Debtors' books and records as of the Closing Date of April 11, 2001.

The Trustee responds that the Travis County claim was originally for $25,225.37 but was reduced as a result of negotiations.  The claim is for ad valorem taxes for the year

13

2001 with respect to real estate leased by the Debtors.  Under
the APA, Avaya assumed the real estate lease.  Consequently, the
Trustee contends that pursuant to section 365 of the Bankruptcy
Code and the terms of the APA, Avaya was responsible for all
obligations arising under the lease, including the Travis County
taxes.

       The Court agrees with the Trustee.  The claim of Travis
County is for ad valorem taxes relating to a real estate lease
that was assumed by Avaya under the APA.  Therefore, pursuant to
section 365 of the Bankruptcy Code and the terms of the APA,
Avaya was responsible for all obligations arising under the
lease, including the Travis County taxes.  This claim should be
included in the amended judgment.

### 5.    Claim Nos. 355 and 356 by Massachusetts

       The Trustee seeks $3,088.95 and $13,799.35 to pay the claims
of the Massachusetts Department of Revenue for withholding taxes.
Avaya objects to these claims because a part of them were not
assessed until after the Closing Date, and, therefore, could not
have been reflected on the Debtors' books and records as of that
date.

       The Trustee responds that all of the tax liabilities
asserted in the Massachusetts claim are for periods before the

14

Closing Date.  Because they are for withholding taxes, the Trustee asserts that they are the type of liabilities that the Debtors typically would have reflected on their payroll and tax records which were destroyed by Avaya.

The Court agrees with the Trustee.  The Massachusetts claim is for withholding taxes that arose before the Closing Date and for which the Debtors would typically accrue an expense. Therefore, the Court would expect to see evidence of those taxes in the Debtors' books and records.  Avaya's destruction of those books and records warrants inclusion of this claim in the amended judgment.

### 6.    Claim No. 371 by AMEX

The Trustee seeks $27,878.48 to pay the claim of AMEX Travel Related Services for charges incurred by several employees on various dates plus interest.  Avaya objects to this claim because there is no evidence that any of the charges were presented to the Debtors for payment before the Closing Date.

The Trustee responds that the proof of claim attachments evidence that all the charges were incurred by employees of the Debtors before the Closing Date.  Further, the Trustee notes that under section 1.03 of the APA, Avaya assumed all obligations of the Debtors except for Excluded Liabilities.  The Debtors'

obligation to reimburse employees for business expenses was not among the Excluded Liabilities.  The Trustee argues that such business expenses are the type that the Debtors would normally reflect in their books and records.  Consequently, the Trustee contends that Avaya did assume that obligation which is reflected in the AMEX proof of claim.

The Court agrees with the Trustee.  The AMEX claim is for employee obligations that Avaya assumed under the APA.  The Debtors' obligation to reimburse employees for business expenses would normally be reflected in their books and records.  Avaya's destruction of those books and records warrants inclusion of this claim in the amended judgment.


IV.   CONCLUSION

For the foregoing reasons, the Court will enter an amended judgment in favor of the Trustee in the amount of $1,535,979.57.

An appropriate Order is attached.


Dated: June 9, 2008                BY THE COURT:



                                   Mary F. Walrath
                                   United States Bankruptcy Judge


16